**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**



**WALTER D. FAIRLEY**

**VERSUS**

**JASON KENT, WARDEN**



U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   SEP 21 2018

WILLIAM W. BLEVINS
CLERK

**CIVIL ACTION**

**NO. 18-cv-4182**

**SECTION: "A" (2)**

## MEMORANDUM IN SUPPORT OF THE OBJECTION TO THE MAGISTRATE'S REPORT AND RECOMMENDATION

**NOW INTO COURT,** comes Walter D. Fairley, (petitioner herein) *pro-se*, who respectfully objects to the Report and Recommendation of the Magistrate, received by petitioner on September 13, 2018. This written objection timely follows within Fourteen (14) days (excluding Saturdays, Sundays, and Legal Holidays; Federal Rules of Civil Procedural, Rule 6) of receipt as required under 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) and Douglas v. United States Auto Assoc, 79 F.3d 1415 (5th Cir. 1996). For the following reasons to wit:

### HISTORY OF THE CASE

On November 4, 2013 petitioner was charged with one count of armed robbery. On May 22, 2014, petitioner was found guilty as charged by a jury. On July 3, 2014, the petitioner was sentenced to 40 years hard labor without the benefit of parole, probation, or suspension of sentence. For the additional penalty under La. R.S. 14:64.3, the petitioner was sentenced to 5 years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The trial court ordered the 5 year additional penalty to be served consecutively to the 40 year sentence. Petitioner appealed the conviction to the Louisiana First Circuit Court of Appeals and on March 6, 2015, the

TENDERED FOR FILING

___ Fee ___
___ Process ___
_X_ Dktd. ___
___ CtRmDep ___
___ Doc. No. ___

court denied petitioner's appeal. Petitioner did not file Writs with the Louisiana Supreme Court during direct appeal. On April 10, 2016, petitioner timely filed an Application for Post Conviction Relief to the 22nd Judicial District Court. On July 8, 2016 the 22nd Judicial District Court denied petitioner's Application for Post Conviction Relief. In August of 2016 petitioner timely filed an Application for Supervisory Writ of Review to the Louisiana First Court of Appeals. On October 31, 2016, the Louisiana First Court of Appeals denied petitioners application. In November of 2016, petitioner filed an Application for Supervisory Writ of Review to the Louisiana Supreme Court, however, due a State Emergency (flooding) the Louisiana Supreme Court postponed petitioner's filing until January of 2017.  On April 6, 2018, the Louisiana Supreme Court denied petitioner's application. In May 2018 petitioner filed a 2254 habeas petition with the U.S. District Court for the Eastern District of Louisiana. The Magistrate Judge issued a report and recommendation dismissing with prejudice petitioner's petition.

The Trial Court, Appellate Court, Louisiana Supreme Court, and the U.S. Magistrate Judge for the Eastern District of Louisiana erred in denying petitioner relief.

## ISSUES PRESENTED FOR REVIEW
## OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION

The continued incarceration of the petitioner would be a violation of his Rights to Due Process of Law as: the First Circuit Court of Appeal and Louisiana Supreme Court erred in denying petitioner's direct appeal; The trial court erred in denying the claims raised by the petitioner in the post-conviction proceeding, as well as the First Circuit and Supreme Court denying the claims. 1.) Petitioner should be allowed equitable tolling for a period of 30 days. 2.) The petitioner was denied effective counsel as guaranteed by his Six Amendment to Effective Assistance of counsel, when counsel conceding petitioner's

2

guilt during closing argument. 3.) Petitioner was tried and convicted for armed robbery with a firearm where evidence fails to meet the Due Process Standard of beyond a reasonable doubt. Insufficiency of evidence, including evidence not introduced, should not bolster a conviction. 4.) A witness for the prosecution committed perjury on the witness stand, thus, affording the petitioner the ill fate by misleading and prejudicing petitioner's case to the jury. This deducted Due Process and a fair trial. 5.) Fruit of poison tree doctrine: Petitioner was vindictively prosecuted.

## LAWS AND ARGUMENT

The Fifth Amendment to the United States Constitution states [n]o person . . . shall be deprived of life, liberty, or property, without due process of law.  U.S. Const., Amend. V; see also La. Const. art. 1 & 2.  The Fifth Amendment is applicable to Louisiana via operation of the Fourteenth Amendment to the United States Constitution. U.S. Const. Amend. *XIV*; See also Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); Jones v. City Parish of East Baton Rouge, 526 So.2d 462, 465 (La. App. 1st Cir. 1988).

In evaluating due process claims, this court inquire whether the practice "offends some principle of justice so rooted in the traditional and conscience of our people as to be ranked as fundamental." Snyder v. Massachusetts, 291 U.S. 97, 105,  54 S.Ct. 330, 332, 78 L.Ed.2d 674 (1934).  A stated by Justice Frankfurter, due process:

> Embodies a system of rights based on moral principles so deeply imbedded in the traditions and feelings of our people as to be deemed fundamental to a civilized society as conceived by our whole history.  Due Process is that which comports with the deepest notions of what is fair, right, and just.

Solesbee v. Balkcom, 339 U.S. 9, 16, 70 S.Ct. 457, 461, 94 L.Ed.2d 604 (1950).

The Due Process Clause will be validated upon actions that "violate those fundamental conceptions of justice which lie at the base of our civil and political institution and which define the community's sense of fair play and decency". United States v. Lovasco, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977). The Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly. Dowling, 493 U.S. at 352-53, 110 S.Ct. at 674. The primary guide in determining whether the principle in question is fundamental is, of course historical practice. Montana v. Egelhoff, 518 U.S. 37, 41-44, 116 S.Ct. 2013, 2017, 135 L.Ed.2d 361 (1996).

It is clearly understood by the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution, as well as Article 1 § 15 of the Louisiana Constitution of 1974, that before it is possible to have a valid criminal conviction or sentence, it is essential that the petitioner's Due Process Rights to a fair trial and equal protection of law that is guaranteed under the United States and the State of Louisiana Constitution must protect an individual from the unjust convictions and sentences.

**1.) Petitioner should be allowed equitable tolling for a period of 30 days.**

The timeliness provision in 2255 is subject to equitable tolling." Holland v. Florida, 560 U.S. 631, 634, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010). A petitioner is entitled to equitable tolling if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.

In opposition, petitioner argues that Diaz v. Kelly, 515 F.3d 149 (2d Cir. 2008), requires equitable tolling. In *Diaz*, the record established that the inmate inquired to the

4

state appellate court nine months after he sought leave to appeal and learned that the state appellate court had denied his petition six months earlier. The inmate filed his federal petition one day later, and the Second Circuit found that equitable tolling applied to the inmate's petition even though he filed the petition six months after AEDPA's one-year deadline. *Diaz*, 515 F.3d at 155-56.

Petitioner's conviction was timely appealed by the Louisiana Appellate Project where a decision was rendered by the Louisiana First Circuit of Appeals on March 6, 2015. Within a few days after petitioner received this answer, petitioner wrote his appellate attorney requesting his trial transcripts and for his attorney to file a *motion for extension of time* so he could prepare to go to the Louisiana Supreme Court with his Writ of Certiorari. Petitioner did not get a response back from his appellate attorney until March 28, 2015. It is certainly an extraordinary circumstance when your appellate attorney says he doesn't have your trial transcripts of any pertinent material needed. How are you to prepare? It is blatant disregard and to further add insult to injury the appellate waits to respond and won't file an extension. Through no fault of his own, since petitioner had no way of knowing how to proceed to the next step, petitioner's time to file his Writ of Certiorari with the Louisiana Supreme Court expired on April 6, 2015.

Petitioner prays this Honorable Court pays close attention to the Appellate Attorney's letter of response dated March 26, 2015.

The attorney says he doesn't THINK (emphasis added) that he will be able to request an extension because of his workload. He further leads the Petitioner into believing that he can file for an extension himself.

The Petitioner doesn't know what to do at this point. That's in part due to the fact that the appellate doesn't make it clear whether he will or he won't file the extension.

The Petitioner did not self induce this notion; the appellate attorney's letter improperly induces him. Time was of the essence at this point, being that the appellate attorney took so long to reply, and also being as the Petitioner must put in a request to be placed on the law library callout.

The Petitioner now knows that by the time he was placed on the callout it was already too late. Petitioner discovered not only how to file for an extension but, also that the LA. Supreme Court rule clearly indicates there will be no extensions considered in this particular phase.

This was devastating and the Petitioner asks this Honorable Court what more is needed to measure extraordinary circumstance? A supposedly experienced appellate attorney not only is vague and misleading in a response, but much more, he erroneously advises the Petitioner on the whole matter!

The proof is here in black and white. The loss of days was about thirty five at this point, so the Petitioner pursued his next option, (the PCR), expeditiously.

Petitioner argues that the limitation period should be equitably tolled for this time period as he has proof that his appellate attorney played a significant part in his delinquency of not filing his Writ of Certiorari on time. Waiting to receive a response from this attorney sums up the complete issue as to why petitioner was not on time. (See attached Appellant Attorney letters)

Thereafter, petitioner knew he had two years to file Application for Post Conviction Relief (PCR) so he began pursuing his trial record while knowing it would practically do no good to file the PCR without it.

On November 2, 2015, petitioner then filed to the district court, by way of *Motion for Production of Trial and Sentencing Transcripts*, to obtain a copy of his trial transcripts so he could properly prepare his (PCR). Every litigator knows it to be impossible to properly file a PCR without them.

Petitioner was diligently pursuing his trial record this entire time, however, it became obvious in April 2016 that he would probably never get them. Petitioner would also like to note for the court that he had no control of how long it took for the courts to answer his motions for production of his trial record. This court should see no point in obliging a *pro se* litigant to pester a state court with frequent inquiries as to whether a pending motion has been decided.

Petitioner filed his PCR to the district court exactly one month after AEDPA's one-year deadline. Once it became clear that petitioner wasn't going to obtain his transcripts he promptly filed his PCR using only his memory of the trial. Petitioner understands that rules are rules, but is it morally right to deny petitioner a copy of his trial record knowing he will not be able to properly file his PCR without it and then go even farther by requesting this court to deny petitioner's petition due to it being untimely by a mere month? In the past the courts have allowed untimely applications. *See Miller*, 305 F.3d at 496 (five and one-half month interval between limitations period and discovery of state court ruling does not show lack of diligence; *Phillips*, 216 F.3d at 511 (four month interval).

7

The State suggests that petitioner could have filed his PCR earlier, where his AEDPA limitations period would still be intact, and of course hind sight is 20-20, however, months leading up to this date petitioner was diligently trying to obtain his trial transcripts to properly file his PCR. Petitioner didn't think it would be proper to file a blank PCR just for the sake of filing one. Had petitioner done this he would have been submitting both exhausted and unexhausted claims once he reached the level of 2254 petition. *See* Rose v. Lundy, 455 U.S. 509, 519-20, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982); *Jenkins*, 330 F.3d at 1155-56 (had petitioner "proceeded to file a federal habeas petition, he ran the distinct risk that the federal petition would be dismissed for failure to exhaust his claims in the state courts."). Surely due diligence does not require prisoners to burden state officials with the need to oppose federal petitions presenting unexhausted claims.

Petitioner would also like to shed some light on a few different claims in his petition that's recently been major issues. One being the fact that his jury convicted him with a 10-2 verdict, which is on the ballot for voters this November 2018, and yet another being his attorney conceded his guilt to the jury in closing argument. The Supreme Court of the United States in Robert McCoy v. Louisiana just over turned McCoy's conviction in 2018 for his attorney conceding his guilt.

Petitioner even has the same issue in his case that over turned Rippo v. Baker, 137 S. Ct. 905; 197 L. Ed. 2d 167; (2017) where it was found that the judge was the target of a federal bribery probe. Here in petitioner's case, it is the District Attorney who was being investigated all the while prosecuting the petitioner. The District Attorney was later convicted on an eighteenth count indictment on federal charges.

8

Petitioner is well aware that courts have found "extraordinary circumstances" in only a small number of situations, however, petitioner respectfully asks this court to allow him the benefit of equitable tolling by just 30 days. A review of petitioner's filings from his PCR on-ward clearly show petitioner's efficiency now that he has access to a law library.

**2.) The petitioner was denied effective counsel as guaranteed by his Six Amendment to Effective Assistance of counsel, when counsel conceding petitioner's guilt during closing argument.**

The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions, in <u>Strickland v. Washington</u>; the Supreme Court established a two prong test to evaluate ineffective assistance claims. To obtain reversal of a conviction under the *Strickland* standard, the defendant must prove that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome in the proceeding.

In this case at hand, petitioner's attorney, (Oliver Carrieree), of less than two weeks preceding trial rendered ineffective assistance of counsel in violation of petitioner's Sixth and Fourteenth Amendment Rights by conceding his guilt during closing argument: a critical stage of trial. Attorney Carriere further extended ineffective assistance by failing to read and review potentially exculpatory information contained on record; by failing to investigate, locate, and present potential witness testimony which could have affected the jury's evaluation of truthfulness of prosecution witnesses. Attorney Carriere also induced through erroneous information that trial was the only sensible alternative, being that the state would start at 25 years on an open plea while

9

petitioner would be eligible for parole under act 790. This rendered ineffective assistance because Act 790 no longer applies to the statue of armed robbery since Jan 1, 1997.

On record, during trial, Attorney Carriere spoke clearly to concede petitioner's guilt by boldly stating "*He's guilty*". This, on record, was to the shock of everyone. Attorney Carriere further ripped the adversarial process by alluding to his "*seeming*" fact that either way his client "*was not walking free*" and was "*going to prison*". Attorney Carriere's insane logic misrepresented petitioner to such a degree that both Chronic and Strickland standards were met. A jury poll of 10-2 was met after such a violation of epic injustice. It is reasonable to believe the outcome, minus petitioner's counsel's failure to be an advocate, would have been different. There is a clear cut line in the proverbial sand for such actions.

Recently in <u>McCoy v. Louisiana,</u> 2018 U.S. Lexis 2802, (1-17-18) the United States Supreme Court ruled that:

The Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance.

The Sixth Amendment guarantees to each criminal defendant ``the Assistance of Counsel for his defense.'' The defendant does not surrender control entirely to counsel, for the Sixth Amendment, in ``grant[ing] to the accused personally the right to make his defense,'' ``speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant.'' <u>Faretta v. California,</u> 422 U. S. 806, 819-820, 95 S. Ct. 2525, 45 L. Ed. 2d 562. The lawyer's province is trial management, but some decisions are reserved for the client including whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal. Autonomy to decide that the objective of the defense is to assert innocence belongs in this reserved-for-the-client category. Refusing to plead guilty in the face of overwhelming evidence against her, rejecting the assistance of counsel, and insisting on maintaining her innocence at the guilt phase of a capital trial are not strategic choices; they are decisions about what the defendant's objectives in fact *are*. See <u>Weaver v. Massachusetts,</u> 582 U. S. ___, ___, 137 S. Ct. 1899, 198 L. Ed. 2d 420. Thus, when a client makes it plain that the objective of ``his defense'' is to maintain innocence of the charged criminal acts and pursue an acquittal, his lawyer must abide by that objective and

may not override it by conceding guilt. Quoting  McCoy v. Louisiana, 2018 U.S. Lexis 2802, (1-17-18)

Much more, the courts held that this error is fundamental. Such errors unearth the very foundation of the judicial system and United States Constitution. All who witnessed this and allowed it in that court were guilty.

Attorney Carriere further misrepresented petitioner, though to a lesser degree, by not taking the vantage point on possible exculpatory information or record. It is a statement given by a witness that was at the bank teller's window and saw the assailant walk up. He was so close he could actually hear the victim's words clearly. So one would surmise he was in the adjoining window. He never stated the assailant spoke nor did he know there was a robbery, therefore, he never mentions any similitude of a gun. Of course the prosecution didn't call this witness and Attorney Carrere was ineffective in not doing so either. It's a witness statement from one of the first to call police. She saw a black male "*run*" from the back. In trial it was denoted the assailant was not wearing a belt, yet had on baggy jeans as the camera indicates. On record, the weight of the mystery gun is discussed. How could a beltless pair of pants hold both pants and a supposed gun without the weapon falling when the assailant's hands were said to be occupied? These two witnesses would have cast fervent doubt on the prosecution's case of armed robbery had they been called to testify. The failure to review, properly investigate, and use all this potentially exculpatory evidence was both deficient and prejudicial to petitioner's trial.

Attorney Carrere also advised petitioner that the state wasn't offering any semblance of a plea on a lesser degree of the offense and if he wanted to plea the state would start no less than 25 years "*hopefully*". Attorney Carriere said that under Act 790 petitioner would be eligible for parole anyway, so even with a trial loss it would be a

11

better alternative. Offenders under the armed robbery statue are no longer eligible under Act 790 as of Jan, 1, 1997. Therefore, Attorney Carriere's erroneous inductive advice was false.

**3.) Petitioner was tried and convicted for armed robbery with a firearm where evidence fails to meet the Due Process Standard of beyond a reasonable doubt. Insufficiency of evidence, including evidence not introduced, should not bolster a conviction.**

The Honorable Judge Hand dismissed this claim because it was previously presented on direct appeal. He cited La. C.Cr.P. art. 930. 4A. That article says that *unless* required in the interest of justice, any claim for relief which was *fully* litigated…. Those same words are Petitioner's exact sentiments. In the interest of justice, Petitioner presented this claim because of *newly discovered* statements/evidence that Attorney Carriere did not present. Therefore, on direct appeal it was not *fully* litigated. The U.S. Constitutional Law 831.5, 840.3 guarantees that Petitioner cannot incur the loss of his freedom without a meaningful opportunity to defend. Louisiana Constitution Art. 1,19 guarantees no loss of freedom without a review is rationality. Under this "Rational" "*ALL evidence*" must be considered if a rational trier of a fact is to act "rationally" so in the interest of justice, newly discovered evidence is presented.

Insufficiency of evidence, including evidence not introduced, should not bolster a conviction. Potential exculpatory evidence would shine light "all the more" on a case lacking sufficient evidence already. U.S. Const. Law 840.3 holds that: (19) Evidence which has a tendency to make the existence of an element of a crime slightly more probable than it would be without the evidence (that is, "relevant" evidence) *cannot, by itself* rationally support a conviction of a crime beyond a reasonable doubt, as is required by Due Process.

In <u>State v Mussall</u>, 523 So.2d 1305 (La. 1988) there are numerous eccentricities, unusual coincidences, and lack of corroboration that make it ripe for ultimately overturning. The same being in Petitioner's case. As noted by this Honorable Court, the trial court never reveals the type of gun (eccentricity and unusual); the officer lied about his search (unusual and uncorroborated, which Petitioner will show later); A key witness statement was not presented (unusual); that same key witness' statement does not corroborate Petitioner having a gun while "*running*" out of the bank (unusual and uncorroborated).

As held in <u>State v Gould</u>, 395 So.2d 647 (La. 1980) "It is not sufficient you should believe a person's guilt probable...... No degree of probability merely will authorize a conviction". To convict a person according to La. R.S. Ann. 15:438 circumstantial evidence must exclude *every* reasonable hypothesis. The 22nd Judicial District Court played jeopardy with Petitioner's life.

Let's examine the evidence with previously existing modicums and what's now discovered that wasn't presented. According to the witness saw a black male running out of the bank. Based on evidence and what was said at trial, he had a pair of baggy jeans on with no belt. A gun that weight was discussed at trial, did not fall while an assailant was running, and with both hands occupied according to witness statement? Petitioner will grant you, for the sake of argument, that maybe standing still that could be possible. Add to that another witness that was so close he said he heard the teller speaking or any semblance of motion that would indicate a robbery was even occurring. Under *Brady* it says this: If the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create reasonable doubt. Quoting <u>U.S.</u>

13

v Agurs, 427 U.S. 97, 112-13, 96 S. Ct. 2392, 2402 (1976). Just as in State v Gould, 395 So.2d 647 (La. 1980) a similar case of bank robbery with a same sentence, there was just not enough evidence to convict for armed robbery.

Honorable Judge Hand, like many, has found culpability to be the justification. He says Petitioner confessed to armed robbery. This is simply not true. He says the witness identified Petitioner. She did not! A careful review will show she only identified the clothing the robber had on. Point being is United States Constitutional Law 840.3(24), which states "The Constitutional necessity in a criminal trial of proof of guilt beyond a reasonable doubt, as guaranteed by Due Process, is not confined to those defendants who are morally blameless; even a thief is entitled to claim that he has been unconstitutionally convicted and imprisoned as a burglar". Just because there is evidence to suggest culpability in a simple robbery doesn't mean you are justified for condemning a man, without sufficient evidence, to an armed robbery charge.

**4.) A witness for the prosecution committed perjury on the witness stand, thus, affording the petitioner the ill fate by misleading and prejudicing petitioner's case to the jury.**

Petitioner's honesty will seem strange in this claim. The Supreme Court "Consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury". This rule applies whether the prosecution knew of the perjury or merely "should have known" of the perjury. U.S. v Agurs, 427 U.S. 97, 112-13, 96 S. Ct. 2392, 2402 (1976).

Petitioner stated the officer "lied on the stand" when he said "when he made the stop that he forgot to search Petitioner". That is a lie. A lie under oath! Petitioner will ask

this court, per *Brady Material* to order the dash cam from the cruiser of the arresting officer. Petitioner saw the cam so he knows it exists.

Honorable Judge Hand clearly indicated on page (5) of his judgment "that evidence might be exculpatory! (Emphasis mine) So let's see that evidence because per *Brady Material* even evidence normally not discoverable must be furnished to a defendant for *Brady* purposes. State v Kemp, 00-22 28 (La. 10-15-02), 828 So. 2d 540. Furthermore, at least five officers that were on the scene searched Petitioner. He would continuously tell them "they just searched me". Their response would be "I'm searching you again". So you being a rational being think that a *BOLO* went out and the arresting officer made the stop, he threw out all protocol and just handcuffed Petitioner, *without searching him*? He perjured and further swayed the jury on an already poorly defended case. Per *Brady Material* Petitioner is asking this Honorable Court to order all officers on that scene to testify. If you review Petitioner's statement upon arrest, the official video, you will see where Petitioner and Det. J. Theriot discussed this. They know he not only didn't forget to search Petitioner, but he called it "something that happens sometimes" referring to the officers who searched why or how they missed it during their search. The arresting officer not only searched once, but at least he did before we got to his cruiser. So where did a weapon "suddenly come from". All you have to do is view the facts and the truth will come out. Petitioner is not saying anything besides the *fact* that a public servant *knowingly took the stand* and lied to the jury with malicious and purposeful intent to secure a conviction for *ST. SLAMMANY*. Petitioner stated with "reasonable particularity" various factual basis. Honorable Judge Hand clearly misconstrued Petitioner's words, so again Petitioner reiterates "The arresting officer lied on the witness

15

stand *when he stated* he had forgotten to search Petitioner once he made the stop". It was an embarrassment to say he and several officers searched Petitioner but found nothing. But upon one last search, out of the view of the dash cam, right before placing Petitioner in the SUV cruiser, he found a weapon that obviously is without make, model, or fingerprints. Due Process/Fair Trial rights violated.

**5.) Fruit of poison tree doctrine: Petitioner was vindictively prosecuted.**

You will find on record at sentencing that Petitioner said this. Petitioner spoke of a vindictive prosecution. Of course, since that time the esteemed Mr. Walter Reed *(St. Tammany District Attorney at the time)* has had the fortune of being found guilty on 18 counts himself. This Honorable Court knows the Fruit of the Poison Tree Doctrine, so Petitioner does not need to elaborate and insult you. Petitioner will just say that he fell from that tree. That his right to a Fair Trial, his Due Process and his Equal Protection have all been violated. The picture is clear and Honorable Judge Hand draws it out perfectly by alluding to his videotaped interview. He further cements this by pointing to various pieces of evidence. So if you have a guy so dead to right, why did Mr. Reed, in a written letter to Mr. Oliver Carriere, *(court appointed counsel),* say that he is not offering any plea deals on his this case, which honestly, for the charge of armed robbery, a plea was out of question for Petitioner? Petitioner didn't commit any armed robbery.

Trial was the only option! How vindictive is this? Yes, you are the DA, so discretion is yours. However, Mr. Reed built the famed "*ST. SLAMMANY*" legend by hardcore tactics and excessive sentencing. Mr. Reed placed real and compulsive restraints on Petitioner's supposed attorney, Mr. Oliver Carriere. The original attorney refused because he wasn't willing to "sell Petitioner out" in good faith. Petitioner commends that

man! With no time to properly investigate, read or review possible exculpatory evidence, or prepare any semblance of meaningful defense, Mr. Carriere accepted Mr. Reed's poison for Petitioner. Petitioner can recall vividly during a break in trial when Mr. Carriere was talking to Mr. Hoffstead, *(prosecution),* and Judge Hand. He told them how he must be losing it because he can't get them to plea anymore. He told them, "*but they will learn*". Petitioner was taken aback! Yet, Petitioner remained calm because it was already obvious, but how unethical could the court be to openly discuss this? In order to bolster a capital crime conviction and bolster winning trial numbers for St. Tammany Parish, Mr. Reed targeted and violated Petitioner. Petitioner is not the one to be hung up on race. The simple fact is that Petitioner knew several people, even people who went to trial, that happen to be Caucasian that received disproportionately far less sentences where there was an obvious armed robbery. To take an overall look at the case is to know it was vindictive. You believe a man guilty of being unethical was ethical all along?

This claim arises to establish good cause for discovery on a claim of Fruit of Poison Tree Doctrine with respect to a former Louisiana State District Attorney, Walter Reed, before whom the petitioner was prosecuted, convicted, and sentenced to forty (40) years for Armed Robbery, where subsequent to the petitioner's Armed Robbery trial, the District Attorney was convicted of several federal charges, among other things, all dealing with his money laundering operation in medical cases he was presiding over. Although it is not alleged that the District Attorney committed any felony charges in the petitioner's case, it is alleged that the District Attorney was laundering money in other cases during the time of petitioner's trial. The petitioner presents evidence that lends support to the claim that the District Attorney was actually biased in the petitioner's own

17

case, in violation of the due process clause of the Federal Constitution's Fourteenth Amendment, which evidence consists of a specific allegation that the petitioner's trial attorney, an associate of the District Attorney, working out of the same Judicial District, that was allegedly familiar and comfortable with corruption, might have agreed to take the petitioner's case to trial quickly so that the petitioner's conviction would deflect any suspicion that the other rigged cases might have attracted.

Petitioner was tried, convicted, and sentenced to forty (40) years hard labor, and prosecuted by Walter Reed, a Louisiana District Attorney for the 22nd Judicial District, Parish of St. Tammany, who was later convicted on federal charges for his involvement in a money laundering operation with his son.  In this federal habeas petition, petitioner claims that Reed had an interest in his conviction to deflect suspicion that he was committing federal crimes during and around the time of petitioner's trial, and that this interest violated the fair-trial guarantee of the Due Process Clause.

District Attorney's who commit federal crimes are *"biased"* in the most basic sense of that word. Petitioner contends, however, that Reed's money laundering operation not only rendered him biased against the State, but also induced a sort of compensatory bias against defendants who did not spend money with him.  Reed was biased in this latter, compensatory sense, petitioner argues, to avoid being seen as uniformly and suspiciously *"soft"* on criminal defendants. Petitioner contends that he was *"deprived of his right to a fair trial"* because there is cause to believe that District Attorney Walter Reed's discretionary actions in this case may have been influenced by a desire on his part to allay suspicion of his pattern of corruption and dishonesty."   In support, he submits a copy of a *Petition for Interim Suspension*, granted by the Louisiana Supreme Court,

barring Walter P. Reed, Louisiana Bar No. 2225, suspending him from the practice of law on an interim basis pursuant to Supreme Court Rule XIX, 19, pending further orders of the court. Walter Reed's life of corruption was considerably more expansive than proved in court. Reed fixed serious felony cases regularly while working as District Attorney, that, as a District Attorney, he continued to corrupt justice through the same political relationships he had exploited as a lawyer.

In addition, petitioner confirms that petitioner's trial was sandwiched tightly between other trials that Reed and his office were a part of. This demonstrates a "*compensatory*" bias as it did in Bracy v. Gramley, 520 U.S. 899, (1997) and Rippo v. Baker, 137 S. Ct. 905; 197 L. Ed. 2d 167; (2017). Rippo v. Baker overturned Rogers Lacaze v. Louisiana, 138 S.Ct. 60; 199 L. Ed. 2d 1 (10-2-17) in a similar manner as well.

This should liken petitioner's claim to the ``*camouflaging bias*'' theory that the Court discussed in Bracy v. Gramley, 520 U. S. 899, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997). The *Bracy* petitioner argued that a judge who accepts bribes to rule in favor of some defendants would seek to disguise that favorable treatment by ruling against defendants who did not bribe him. Id., at 905, 117 S. Ct. 1793, 138 L. Ed. 2d 97. That court explained that despite the ``*speculative*'' nature of that theory, the petitioner was entitled to discovery because he had also alleged specific facts suggesting that the judge may have colluded with defense counsel to rush the petitioner's case to trial. See id., at 905-909, 117 S. Ct. 1793, 138 L. Ed. 2d 97. As seen throughout this claim, this is exactly what happened in petitioner's case.

Petitioner would also like to note that under the Due Process Clause of the United States Constitution, a criminal defendant is entitled to an impartial prosecutor. Young v.

19

United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, (1987). The Supreme Court has held that the participation of an interested or biased prosecutor can implicate the fundamental fairness of the trial itself. Marshall v. Jerrico, Inc., 446 U.S. 238; (1980).

As noted above, petitioner's attorney at trial was a former associate of Reed and Reed had him appointed to represent petitioner in petitioner's case. The lawyer announced that he was ready for trial just ten days later. He did not request additional time to prepare penalty-phase evidence in this case even when the State announced at the outset that, if petitioner were convicted, it would see that petitioner would stay in prison for a "*very long*" time as evidence in aggravation. Fruit of Poison Tree Doctrine is written all over petitioner's case. This Court should ask not whether a District Attorney harbors an actual, subjective bias, but instead whether, as an objective matter, the average District Attorney in his position is likely to be neutral, or whether there is an unconstitutional potential for bias.

## CUMULATIVE ERROR ANALYSIS LAWS AND ARGUMENT

When considering the totality of the errors that transpired during trial, if they had been brought up at the time would have probably produced a finding of not guilty.

The continued incarceration of the Petitioner would be a violation of his Rights to Due Process of Law as: The First Circuit Court of Appeal and Louisiana Supreme Court erred in denying Petitioner's direct appeal; The trial court erred in denying the claims raised by the Petitioner in the post-conviction proceeding, as well as the First Circuit and Supreme Court denying the claims. The Petitioner was denied effectiveness of counsel as guaranteed by his Six Amendment to Effective Assistance of counsel, when counsel

conceded his guilt during closing argument as well as a multitude of other Due Process violations.

A violation of Due Process and Equal Protection of the Law that is guaranteed under the United States Constitution. U.S.C.A. Const. Amend. (14). Under such an analysis, errors committed during a defendant's trial court proceedings in State Court that are "insignificant individually" to warrant collateral relief, are viewed "collectively" to determine whether the proceedings was fundamentally unfair, and deprived the Petitioner of Due Process. Compare: Crisp v. Duckworth, 743 F.2d 580 (1984), in regards to the "cumulative effect" of incompetent acts by defense counsel. See also; Ewing v. Williams, 596 F.2d 391 (1979); U.S. v. Hammands, 425 F.2d 597 (1970); *Derden v. McNeel*, CA 5, No. 90-1230, 49 Cr. L. 1470 (8-16-91); and Fikes v. Alabama, 77 S.Ct. 281. . . "Under circumstances such as these . . . No single one of these issues alone would justify a reversal. I cannot escape however, the inevitable conclusion that together, "collectively" they bring the result below Plimsoll line of Due Process.

RE: The Due Process in addition to Fundamental Fairness; NOTE: The United States Constitution guarantees a criminal defendant a trial free from fundamental unfairness. Considering the totality, it should be ruled that there is a violation and that Due Process has been afforded on the Petitioner.

## CONCLUSION

In light of the foregoing, the Petitioner respectfully submits his Objection to the Report and Recommendation of the Magistrate Judge to his Habeas Corpus Petition. The petitioner respectfully seeks equitable tolling of 30 days and that this Honorable Court reviews his Habeas Corpus Petition. That this Honorable Court, for good cause shown and in the interest of justice, grants that this Petitioner has established exceptional circumstances that is required by the Constitution of the United States.

**Respectfully submitted;**

**Walter D. Fairley # 626719**
**Dixon Correctional Institute**
**P.O. Box 788 Unit-2 Dorm-12**
**Jackson, La.  70748**

## CERTIFICATE OF SERVICE

I, Walter D. Fairley., hereby certify that a copy of the foregoing Objection to the Report and Recommendation of the Magistrate Judge has been served upon the St. Tammany Parish District Attorney's Office by depositing a copy of the same in the United States Mail, postage prepaid, and properly addressed.

Sent out this _18th_ day of **September, 2018**, from Jackson, Louisiana.

**Walter D. Fairley # 626719**

Walter D. Fairley #606719
Dixon Corr. Inst / U-2 D-12
Post Office Box 788
Jackson, Louisiana 70748

Eastern District of Louisiana
500 Poydras St., C-151
New Orleans, La 70130



Baton Rouge P&DC 708
WED 19 SEP 2018 PM